## UNITED STATES v. GARDZIELEWSKI.

### No. 7759.

Circuit Court of Appeals, Seventh Circuit.

Jan. 16, 1942.

Writ of Certiorari Denied March 30, 1942.

See —— U.S. ——, 62 S.Ct. 915, 86 L.Ed. ——.

MAJOR, Circuit Judge, dissenting.

Cameron Latter, James E. Daniels, and Thad Niemira, all of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., and Edward J. Ryan, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellant appeals from his conviction of the charge of aiding and abetting an officer of the United States, the chairman of a Local Selective Service Draft Board, to receive a bribe to influence his classification of a registrant under the Selective Service and Training Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. The indictment, charging violation of §§ 117 and 332 of the Criminal Code, 18 U.S.C.A. §§ 207 and 550, was in two counts, one relating to a bribe of $35 and the other to one of $25.

Appellant was the examining physician for the Local Board of which his co-defendant, Joseph Nosek was the chairman. The only evidence directly linking him with the charge of "aiding, abetting, counselling and procuring," was that of Walter Kukovec, a draft registrant. Kukovec testified that he had registered in November, 1940, returning his questionnaire to Local Board 110, of which Nosek was chairman. He claimed deferment on the ground of the dependency of his father and two brothers upon him, stating that he contributed $25 a week to their support. He also stated in the questionnaire that he had earned about $600 during the preceding year. He was placed in Class III. In April, 1941, however, in response to a request from Kukovec's father that he be inducted immediately for the reason that he was not contributing to the family support, Kukovec was sent for relative to reclassification, and on April 30, he received notice to appear for physical examination.

According to Kukovec's testimony, as he was dressing after his examination, he remarked that he was going up to the Draft Board to ask for another six months' extension so that he could make enough money during the summer to lay some aside for his mother who was then in a state institution (the Elgin State Hospital). He testified that appellant then said, "You don't have to go to the Draft Board, you go over and see Joe Nosek," and that when Kukovec inquired as to his examination, he said, "It balances," explaining that he meant by that, "You go or you don't." He further testified that after inquiring about Kukovec's work, earnings and schooling, appellant asked him if it would be worth $30 to stay out of the army, and that he (Kukovec) looked a little startled because it came so fast, whereupon appellant said, "Well, you know it will make the pen write easier," and picked up the telephone and called Nosek telling him that Kukovec was coming over to see him about a six months' deferment. Kukovec then went over to Nosek's office where Nosek greeted him with, "Oh, yes, you are Walter Kukovec, you came to see me about a six months' deferment." They talked about his work, earnings and the like, and Nosek then advised him to send a few dollars to his mother, obtain "money receipt" and receipt from the hospital, and in case of investigation that would show he was supporting her. Kukovec testified that Nosek then said, "Favors like this don't go empty handed," and when he inquired as to his meaning he explained, "If you bring me $35 I will have you put in Class I-B," the temporary physical disability classification. He said he would put the money in an envelope in his desk and return it if Kukovec were not deferred.

After Kukovec left Nosek's office, he went down to the War Department and told his story to an officer there, and was sent to the Central Selective Service Board, then to a member of the Department of Justice, and with the latter, to the F. B. I. After these interviews, Kukovec says that he marked ten one-dollar bills, making a record of the numbers, and took them out to Nosek, telling him that he would return the following day with the balance of $25. The following day he returned to the F. B. I. office and was given one five-dollar bill and two tens which he took out to Nosek. He went out to his office with three Government agents who let him out a short distance from the office. As Kukovec emerged from Nosek's office after giving him the $25, he saw the three agents going in. The latter testified later as to the serving of a warrant on Nosek, searching for and finding one of the marked one-dollar bills and the five and ten-dollar bills which they had furnished.

With respect to his mother, Kukovec stated that he had not been taking care of her since she went to the asylum for the reason that the State did that. Although he stated that he had not wanted to have her in a state institution and would have preferred to have her in a private hospital, he had never been out to Elgin to see her, did not know who her doctor was, had made no inquiry about him and did not know what doctor committed her. He repeatedly stated that he did not want her released until she was well enough to come out.

Appellant's testimony was that he had placed Kukovec in Class I-B for limited military service because of his bad teeth, and that Kukovec had stated that he would not mind going into the army at once if it were not for his mother whom his father had railroaded into the Elgin State Hospital; that when he remarked that it would take a lawyer to get her out, Kukovec inquired if he knew one, whereupon appellant told him that Nosek was a good one. Appellant stated that he had recommended Nosek to a number of people including his mother, sister and aunt, but that there had never been any arrangement for splitting fees between them. He categorically denied having asked Kukovec if he were willing to pay $30 or $35 to stay out of the army, or that there had been any such discussion between them, although he said, "I probably may have mentioned attorney's fees for legal services."

Appellant contends that there is no substantial evidence to support the verdict, and that the only proof tending to show any criminal intent on his part consists of that of Kukovec which is so self-evidently and inherently improbable that it cannot be deemed substantial. He also urges that the court erred in refusing to advise the jury that evidence competent as to Nosek but incompetent as to appellant was not binding upon the latter, and that his repeated refusals to so charge the jury deprived appellant of a fair and impartial trial. He further contends that refusal of the court to grant him a severance, coupled with the

alleged unfair rulings on evidence amounted to an abuse of discretion, entitling him to a reversal of the judgment.

The instructions to the jury are not incorporated in the record before us. We must, therefore, presume that they correctly stated the law of the case. Moreover, the trial court stated on at least two occasions when objection was made to the admissibility of evidence of conversations involving Nosek, and their non-applicability to appellant, that he would instruct the jury at one time as to these conversations, at the conclusion of the evidence, and we have no reason to doubt that he did so. True, he denied appellant's motion to exclude the evidence and to instruct the jury to disregard it. Such denial was proper in view of the admissibility of the evidence to establish the commission of the crime by Nosek, an essential element in proof of the charge of aiding, abetting, counselling and procuring the commission of the crime. In the absence of record proof to the contrary we are convinced that the jury was correctly instructed as to the law relating to its consideration of the evidence of the case.

As to the evidence, the credibility of the witness Kukovec who was the only witness whose testimony bore directly on the complicity of appellant in the crime, was a matter for the jury to pass upon. Cf. O'Brien v. United States, 7 Cir., 25 F.2d 90. It had found appellant's co-defendant guilty, and he took no appeal, hence we have no occasion to review the record as to him. We may say in passing, however, that we are convinced that his guilt was established beyond a reasonable doubt, and appellant does not question that issue of the case here. Kukovec was sent by appellant to see Nosek. Appellant did not dispute this fact, but only sought to explain that his purpose in sending him was to obtain the release of his mother from the state institution. This, in turn, Kukovec denied. In addition to his denial of Kukovec's testimony as intended to prove his guilt, and his explanation of the facts in a manner consistent with innocent intent, appellant also introduced the evidence of a number of character witnesses all of whom stated that his reputation for veracity was good.

The evidence squarely presented a disputed question of fact which could only be resolved by the jury. Hence appellant was not entitled to a directed verdict of not guilty. and we cannot reverse the judgment of conviction on the ground that it is not supported by substantial evidence. It is true, as appellant points out, that the evidence of Kukovec was inconsistent and evasive at several points. However, from a careful study of this record we cannot agree with appellant that his testimony was "so self-evidently and inherently improbable that it cannot be deemed 'substantial.' " Nor was there any abuse of discretion in the denial of the motion for severance under the facts here presented.

Judgment affirmed.

MAJOR, Circuit Judge (dissenting).

I feel obliged to dissent. The evidence, as related in the opinion, discloses an extremely close case on the facts. As stated, the only testimony directly connecting appellant with the crime charged was furnished by the witness Kukovec. It may be said further that the only incriminating testimony by this witness was that the appellant asked: "Would it be worth $30 to stay out of the Army?" and his statement, "Well, you know it will make the pen write easier." All the other testimony of Kukovec, including appellant's telephone conversation with Nosek, as well as the other circumstances in the case, are as consistent with appellant's innocence as with his guilt. These incriminating statements were denied by appellant, a licensed physician of the State of Illinois, who had practiced his profession at 1800 South Ashland Avenue, Chicago, for ten years prior to the time in question. He enjoyed a fairly lucrative practice. He was a member of the American and Chicago Medical Society and, at the time, was serving on the staff of two Chicago hospitals. At the trial he placed in issue his reputation for honesty and integrity and proved it was good by a number of witnesses. No witness testified to the contrary.

After his examination of Kukovec, he recommended that he be given a classification of 1B because of defective teeth. No witness testified but that this was a proper recommendation. As examining physician for the Draft Board, he had examined some 600 or 700 men, devoting about two hours a day to this service. There is not a scintilla of evidence in the record other than that of Kukovec but that this patriotic service was performed faithfully and honestly.

Prior to the time in question, Kukovec had been given a preferred classification by the Board, of which Nosek was Chair-

man, on his claim that his father and two minor brothers were dependent upon him for support. Upon complaint by the father that his son was gambling and not contributing to the support of the family, he was notified by the Board to report for physical examination (the one concerned in the present controversy). His own brother testified: "I know my brother's (Walter Kukovec's) associates and friends in the neighborhood and know his reputation for truth and veracity. Nobody will believe him on a stack of bibles. His reputation is bad." On the trial, Kukovec's testimony was seriously impaired by numerous contradictory statements.

I relate these salient facts, not for the purpose of taking issue with the majority conclusion that a jury question was presented (although of this I have serious doubt), but to show that the evidence, considered in the light most favorable to the Government, is of such a dubious nature as to make the admission of the testimony complained of reversible error. To my way of thinking, an error may, or may not, be reversible, dependent upon the character and weight of the testimony relied upon for conviction. For instance, in the instant case, the testimony against Nosek was so overwhelming it would be easy to conclude that any ordinary error had done no harm and was not reversible. As to the appellant, however, the evidence relied upon is so uncertain and carries so little weight that even a slight error might have affected the result.

Other than the testimony of Kukovec as to his conversation with appellant at the time of his examination, substantially all the evidence is as to what happened in the office of Nosek, including the conversations between these two men, and numerous statements made to Government agents after the consummation of the crime, all outside the presence of the appellant. This testimony was admitted without limitation over numerous objections on behalf of appellant. True, the court indicated that he would instruct the jury as to this line of testimony, and the opinion presumes that this was done because the court's charge to the jury is not incorporated in the record. Ordinarily, such a presumption may be indulged in, but in the instant situation it does violence to the record.

In addition to the objections which were made and overruled at the time the testi-mony was offered, appellant renewed his objection at the conclusion of the Government's case, and requested the court to instruct the jury that conversations and transactions out of the presence and hearing of appellant were not to be considered against him. The record discloses that the court, after hearing counsel on this request, stated:

"I have carefully considered all of the evidence, both last evening and this afternoon during the noon adjournment and I went over it carefully and your objection was raised and timely raised while the evidence was going in which gave the Court ample time to give the matter careful consideration; * * * *".

The request was then denied by the court. So the record discloses that the court, after due consideration, refused to instruct the jury as requested, either at the time the objectionable testimony was offered, or at the conclusion of the Government's case. The court having carefully considered the evidence and deliberately ruled, I am of the view that it is not reasonable to presume that he changed his mind and correctly instructed the jury. But if so, such instruction could only serve to minimize the effect of the objectionable testimony—it could not remove the error of its admission without limitation.

The Government, while contending that the testimony was properly admitted, tacitly concedes that it was not proper upon the question of appellant's connection with the offense. It is pointed out that neither the objection to the testimony, nor the request that the jury be instructed to disregard it, was so limited. This is a rather technical excuse for the court's failure to so limit the testimony, especially in view of the fact that appellant, prior to the commencement of the trial, moved for a severance, and specifically pointed out a large amount of testimony, including that now complained of, which would be admissible solely against Nosek, and that appellant would be prejudiced thereby. Thus, counsel for the Government, as well as the court, were warned in advance of the prejudicial situation calculated to develop and should have been vigilant in expressly limiting the testimony, at the time it was offered, so that no prejudice might result to appellant.

The Government argues that the admission of this testimony did no harm. This may be true, but it is a matter of specu-

lation. In view of the character of testimony relied upon for a conviction, I am satisfied it might have done harm and that is sufficient. I think the ends of justice will best be served by a reversal so that the Government may, if it sees fit, submit the case to another jury, with evidence properly limited to the purpose for which it is offered and at the time it is offered.